IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| DOUGLAS PHILLIP HEFEL, ) | |
| SHEILA KAY HEFEL, ) | Bankruptcy No. 10-02787 |
|     Debtors. ) | |
| -------------------------------------------------- | |
| DU TRAC COMMUNITY ) | |
| CREDIT UNION, ) | Adversary No. 12-09016 |
|     Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| DOUGLAS PHILLIP HEFEL, ) | |
| SHEILA KAY HEFEL, ) | |
|     Defendants. ) | |

**ORDER RE: COMPLAINT TO REVOKE DISCHARGE**

This matter came on for trial on April 8, 2013. Plaintiff Du Trac Community Credit Union ("Du Trac") was represented by Attorneys Peter Arling and Stephen C. Krumpe. Defendants/Debtors Douglas and Sheila Hefel were represented by Attorney Steven P. Wandro. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

**STATEMENT OF THE CASE**

Du Trac seeks revocation of Debtors' discharge for fraud including false oaths and concealment of property. Debtors assert Du Trac is barred from bringing these claims. They argue Du Trac had knowledge of the relevant facts prior to entry

of discharge and is therefore prevented from pursuing its claim.  Debtors also deny that they committed fraud.

## FINDINGS OF FACT

Debtors filed their Chapter 7 petition on October 8, 2010.  The § 341 creditors meeting began on November 29, 2010 and was continued to and concluded on December 27, 2010.  The last date to object to discharge was January 28, 2011.  The U.S. Trustee and the Chapter 7 Trustee received an extension of that deadline to March 29, 2011.  This extension did not apply to Du Trac.  Counsel for Trustee deposed Debtors at a Rule 2004 exam on February 3, 2011 wherein Du Trac's counsel also questioned Debtors.  With no objections filed, discharge entered on April 6, 2011.

Du Trac filed this adversary action to revoke the discharge on February 17, 2012.  According to Trustee's Final Report filed in the Chapter 7 case, Du Trac has an allowed unsecured claim of $750,661.50.  Trustee proposes to distribute $34,325.04 to Du Trac on that claim.  The only other unsecured claim remaining is one asserted by the Department of U.S. Treasury for $5,592.85.

Debtors filed amended bankruptcy schedules and statements on November 29, 2010, February 21, 2011 and June 28, 2011.  They have never included in bankruptcy schedules or statements their three individual Trusts dated 10/27/2000, although they testified at the Rule 2004 exams that the Trusts existed but held no assets.  Debtors also have contingent interests as beneficiaries in several other Trusts which they did not disclose in their bankruptcy schedules or in testimony prior to discharge.  These include Douglas Hefel's 25% interests in:

1. Adelene and Bernard Hefel Trust, valued at $1.6 million
2. Bernard Hefel Trust, a 50% owner of ABC Hefel LP valued at

        $2.9 million

3.     Adelene Hefel Trust, also a 50% owner of ABC Hefel LP valued at $2.9 million

Debtor Sheila Hefel has a 25% contingent interest as a beneficiary of the Hoff Family Trust. She received payments from this Trust after filing the bankruptcy petition.

Debtors hold interests in eight separate life insurance policies either as the insureds, owners or beneficiaries. The total face amount of these policies is $13.2 million. Debtors did not disclose these interests in their bankruptcy schedules or in testimony prior to discharge. Du Trac learned of these policies through discovery in this adversary proceeding, which included subpoenas served on accountants and family members, and other third parties. Within 90 days postpetition, Sheila Hefel signed a check dated December 31, 2010 paying the premium on one of the policies.

Debtors sold a 1989 26.5 foot Baja power boat for $6,600 on June 25, 2010, within four months of filing the bankruptcy petition. They assert they considered this to be in the ordinary course of business and they did not think they needed to disclose this transfer. The purchaser of the boat, Ryan Gaherty, testified he had considered buying the boat when Debtors advertised it for a higher price and ended up buying it when the price was substantially lower. Debtors are not in the business of selling boats. The Baja was the only boat they ever owned or sold.

In amended schedules filed November 29, 2010, Debtors value their interests in nine separate businesses as $10.00 each. They claim each of the businesses exempt and value each exemption as "FMV." The nine businesses are: Dubuque Injection Service, Hefel Equipment, Precision Dance Co., Riviera Belle Estates Assoc., Star Builders, Inc., Star Properties, LLC, Star Water Co., Waterford Estates Property Owners Assoc. and Westgate Communities, LLC. Trustee and Du Trac

filed objections to the exemptions. The Court granted the objections and denied the exemptions to the extent their value exceeded a total of $945.84, the amount remaining of Debtor's wild card exemption under Iowa Code sec. 624.6(14). Order re Objections to Exemptions, Doc. 48, Feb. 16, 2011. The District Court affirmed this order on appeal. In re Hefel, 2011 WL 3292929 (N.D. Iowa July 29, 2011).

Trustee and Debtors subsequently entered into a compromise regarding the business interests claimed exempt. Debtors agreed to dismiss their appeal to the Eighth Circuit of the exemption order and pay Trustee $125,000 in exchange for Trustee abandoning the assets from the bankruptcy estate to Debtors. Overruling Du Trac's objection, the Court granted the Motion to Compromise on September 19, 2011.

At trial herein, Du Trac offered the testimony and report of Shannon Shaw regarding the value of some of these business entities. Mr. Shaw valued Douglas Hefel's interest in Dubuque Injection Service Company at between $5,000 and $87,629. He also valued both Debtors' interest in Star Builders, Inc. between $15,350 and $38,441. Mr. Shaw placed a value of Douglas Hefel's interest in Hefel Equipment, with a discount for lack of marketability, at between $37,888 and $53,888. In addition, Debtors did not disclose in their bankruptcy Douglas Hefel's interest in Hawk Development which Mr. Shaw values at $3,510 after discounts.

The record contains copies of Debtors' financial statements given to Du Trac from 2000, 2007, 2008 and 2009. Pl.'s Exs. 115-119. In those statements, Debtors value the interest in Dubuque Injection Service at $190,000. They list Star Builders as having a negative value with the 2009 financial statement showing $(49,440). Hefel Equipment is listed in the 2000 financial statement with a value of $159,585 and is not included in the more recent statements. Hawk Development is

listed in the 2000 statement with a value of $32,000 for Debtor's 2% interest and is not included in the more recent statements.

Debtor Douglas Hefel is one of three individuals who own equal shares in Dubuque Injection Service. The other two owners are Steve Kress and Debtor's brother Randy Hefel. Prior to and during Debtors' Chapter 7 case, the three owners had discussions regarding sales of their interests including in late 2010 and early 2011. Eventually, the two Hefel brothers removed Steve Kress as officer and director of the company on December 12, 2011. Offers between the individuals at that time appear to value Douglas Hefel's interest at $200,000 (Mr. Kress' offer) or $400,000 (Douglas Hefel's offer).

Steve Kress contacted Trustee Sheryl Schnittjer not long before discharge entered to inquire about purchasing the estate's interest in Dubuque Injection. Mr. Kress testified Trustee responded that she was not interested in selling only a portion of the bankruptcy estate at that point, but Mr. Kress was not interested in purchasing any estate assets other than the interest in Dubuque Injection. Both Steve Kress and his son Scott Kress testified that Douglas Hefel stated he had to remove some items from his house before an inspection because Du Trac was being difficult in his bankruptcy case. Debtor denied ever saying that to the Kresses. Steve Kress stated Randy Hefel told him if someone called about Douglas Hefel's bankruptcy case that he should say no one was interested in buying the estate's interest in Dubuque Injection.

Du Trac points out that Debtors did not disclose any accounts receivable owed to them in bankruptcy schedules and statements. They listed debts from Star Properties and Star Builders as uncollectible. Post-discharge, however, Debtors collected on the note from Star Builders through a transfer of assets worth $34,000.

5

Debtors also received payments from Star Water Company of $182.53 and from the Homebuilders Association of $515.57 which Du Trac classifies as payments on accounts receivable. Du Trac also asserts Debtors should have disclosed their personal use of cell phones owned by Westgate Communities and Sheila Hefel's anticipated increase in annual income from Westgate in 2011.

In their brief, Debtors argue Du Trac, through its attorneys, had "knowledge of facts before the date of discharge to place it on notice of the" alleged fraud. Defs.' Post-Trial Br., Doc. 38, p. 14. In support of this statement, Debtors cite to Motions for allowance of fees filed by the attorneys for Trustee. In these Motions, some of the descriptions of legal services refer to discussions between counsel for Trustee and counsel for Du Trac regarding some of the property Debtors did not disclose. These discussions between counsel indicate to the Court that Du Trac had suspicions regarding Debtors' disclosure of assets prior to the discharge. They do not prove that Du Trac had knowledge of Debtors' alleged fraud prior to discharge under § 727(d)(1).

Jeffrey Waller, the business lending manager at Du Trac, testified regarding Debtors' file at Du Trac. He stated that he was never previously aware of many of Debtors' interests in receivables, Hawk Development Ltd., the Baja boat, life insurance policies, and the value of assets held by the multiple trusts. Mr. Waller noted that Debtors had not included all their assets in their previous financial statements. He stated that he was surprised that Debtors failed to include all their assets in the financial statements, as most people tend to "over include" property interests in financial statements given for lending purposes. Debtors specifically denied any ownership interest in Hawk Development and did not include that interest in financial statements after 2000. Mr. Waller stated that Trustee asked Du Trac to subpoena documents in the bankruptcy case prior to Trustee's deadline to

6

object to discharge.  Du Trac and Trustee received some of the requested information just a few days before the deadline.

Sheila Hefel handles the bookkeeping, payables and receivables for Star Water and Star Properties.  In testimony, she characterized Star Water as a "volunteer organization."  She stated the $182 check Debtors received around the time of the 341 meeting was a reimbursement check which she didn't consider to be a "receivable" for Debtors and she didn't think she needed to disclose it.  Debtors valued their interest in Star Properties as $10, although they had an agreement with the City of Bellevue which resulted in Debtors receiving a payment from the City of $8,490 in October 2011.  Sheila Hefel testified at trial she did not remember what was in her head when she filled out the bankruptcy schedules and statements in 2010.  She admitted that Du Trac did not know about the undisclosed trusts or life insurance policies prior to this adversary proceeding.  Although Ms. Hefel received a check from Hoff trust dated November 29, 2010, just a few weeks after filing her bankruptcy petition, she stated she was not aware she was a beneficiary of the trust. She testified she did not disclose an interest in Hawk Development because Debtors only held a two percent ownership interest and she thought there was no need to disclose it unless they had at least a five percent interest.

Debtor Douglas Hefel testified he thought Du Trac was aware of some of the undisclosed assets through financial statements, correspondence or discussions, but he wasn't sure.  He also believed there was a five percent rule which led Debtors not to disclose their two percent interest in Hawk Development.  Mr. Hefel could not recall having discussions in 2010 about selling his shares in Dubuque Injection to Steven Kress.  He testified he was unaware of the various trusts when he filed his bankruptcy petition.  He was not privy to any information regarding the trusts and

7

did not have copies. Douglas Hefel testified he had no contact with any of the trust papers after the day he signed them.

Randy Hefel is Douglas Hefel's brother. He maintains the financial records for several companies and the trusts set up for his parents, Adeline and Bernard Hefel and has a general idea of his parents' estate plan. Some of the businesses are owned by multiple Hefel family members or Hefel trusts. Randy Hefel prepared tax returns for his parents' trusts and for their company ABC Hefel. He testified about the amount of income ABC Hefel received and the amount of life insurance owned by the trusts. He stated all his siblings were aware of the trusts and signed the trust documents. His parents set up the trusts to hold insurance policies.

## CLAIM PRECLUSION, ISSUE PRECLUSION AND LAW OF THE CASE

This Court considered Debtors' claim of res judicata, or claim preclusion, in the Order re: Motion for Summary Judgment (Doc. 38) entered May 21, 2012. The Order states, in part:

> [T]he Court concludes Debtors are not entitled to summary judgment based on claim preclusion. They have failed to convince the Court that the Order approving the Motion to Compromise satisfies all four elements of that doctrine. The two proceedings are not based on the same claims or causes of action and it is debatable whether the earlier Order constitutes a final judgment on the merits or whether both proceedings involve the same parties.

Order re Mot. For Summ. J. 7. The Court has again reviewed Debtors' arguments and citations regarding claim preclusion, as well as issue preclusion and law of the case, and concludes that none of these doctrines fits the facts of this case. Du Trac is not precluded by the Order approving Trustee's Motion to Compromise or the subsequent abandonment of assets of the estate from bringing its claim to revoke

Debtors' discharge in this adversary proceeding. The issue of Debtors' fraud has not previously been litigated or decided by this Court or the District Court.

## REVOCATION OF DISCHARGE

Revocation of a discharge is an extraordinary remedy to be sparingly applied. In re Kasden, 209 B.R. 239, 241 (B.A.P. 8th Cir. 1997). Under § 727(d)(1), the plaintiff must prove each element by a preponderance of the evidence. In re Toftness, 439 B.R. 499, 501 (B.A.P. 8th Cir. 2010). These elements are: 1) the discharge was obtained through the debtor's fraud and 2) the plaintiff did not know of the fraud until after entry of the discharge. In re DePriest, 414 B.R. 518, 521 (Bankr. W.D. Mo. 2009). The element of the debtor's fraud includes behavior which would be sufficient to deny discharge under § 727(a)(2)-(5). In re Osborne, 476 B.R. 284, 292 (Bankr. D. Kan. 2012). In In re Peterson, 356 B.R. 468, 478-79 (Bankr. N.D. Iowa 2006), this Court revoked discharge based on the debtor's false oath under § 727(a)(4)(A). It noted that "debtors have an 'absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless.'" Id. at 478, quoting Kasden, 209 B.R. at 243-44.

To prove fraudulent concealment of property under § 727(a)(2)(B), the plaintiff must prove the following elements: (1) the act complained of occurred within one year prior to the petition date; (2) the act was that of the debtor; (3) it consisted of a transfer, removal, destruction or concealment of the debtor's property; and (4) it was done with an intent to hinder, delay, or defraud either a creditor or an officer of the estate. In re Grimlie, 439 B.R. 710, 716 (B.A.P. 8th Cir. 2010); Peterson, 356 B.R. at 477. The elements of false oath under § 727(a)(4)(A) are: "(1) Debtor made a statement under oath; (2) the statement was false; (3) Debtor knew the statement was false; (4) Debtor made the statement with fraudulent intent;

and (5) the statement related materially to the Debtor's bankruptcy case." In re Freese, 460 B.R. 733, 738 (B.A.P. 8th Cir. 2011).

"[F]raudulent intent may be established by circumstantial evidence." In re Charles, 474 B.R. 680, 684 (B.A.P. 8th Cir. 2012). Statements made with reckless indifference to the truth can be regarded as intentionally false. Id. A statement is material to the bankruptcy case if it bears a relationship to the debtor's business, transactions or estate, or concerns the discovery or disposition of property. DePriest, 414 B.R. at 522.

"Multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the truth, which is the functional equivalent of intent to deceive." Peterson, 356 B.R. at 478, quoting In re Geller, 314 B.R. 880, 807 (Bankr. D.N.D. 2004). In In re Larson, 2010 WL 1633466, *5 (Bankr. D. Mass. April 20, 2010), the Court stated that "the sheer number and significance of the inaccuracies and omissions" demonstrated at least a reckless indifference to the truth. That court cited In re Tully, 818 F.2d 106, 110-11 (1st Cir. 1987), which set out the philosophical underpinnings of § 727(a), as follows:

> [T]he very purpose . . . of the law. . . is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. . . . "[T]he successful functioning of the bankruptcy act hinges [] upon the [debtor's] veracity and [] willingness to make a full disclosure." Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.
> . . .
> A [debtor] cannot omit items from [] schedules, force the trustee and the creditors, at their peril, to guess that [the debtor] has done so – and

10

hold them to a mythical requirement that they search through a paperwork jungle in the hope of finding an overlooked needle in a documentary haystack.

Proof of allegations of lying in bankruptcy schedules and statements and at the § 341 meeting and Rule 2004 exam can satisfy the requirement of fraud under § 727(a)(4)(A). In re McCullough, 259 B.R. 509, 522 (Bankr. D.R.I. 2001) (setting out numerous examples of the debtor's lack of credibility, including receiving undisclosed disbursements from a trust at the time of the § 341 meeting). A debtor who hides known pre-bankruptcy assets from creditors and the trustee may find the discharge revoked for fraud. In re Barr, 207 B.R. 168, 174 (Bankr. N.D. Ill. 1997) (noting substantial undervaluation of a material asset on schedules is sufficient to show bankruptcy fraud). Fraud can be proven by evidence that debtors knew they omitted assets and the failure to list the assets would mislead creditors or the trustee. Id. at 176.

## ANALYSIS

The first element to consider under § 727(d)(1) is whether Du Trac was aware of Debtors' allegedly fraudulent acts before entry of the discharge. Du Trac's witness, Jeffrey Waller, testified that he was never aware of many of Debtors undisclosed assets until receiving information through discovery in this adversary proceeding. Sheila Hefel admitted in testimony that Du Trac was not previously aware of the undisclosed trusts or life insurance policies. Douglas Hefel stated he thought Du Trac was probably aware of the extent of their property interests, but did not offer any specifics or documents to back up his testimony. As noted above, the entries made in Trustee's counsel's fee applications do not prove that Du Trac had actual knowledge, rather than mere suspicions, prior to discharge that Debtors had concealed interests in property or made false oaths in testimony or bankruptcy

11

filings. The Court therefore concludes that Du Trac has met its burden to prove by a preponderance of the evidence that it was not aware of Debtors' alleged fraud prior to entry of the bankruptcy discharge.

To prove the second element under § 727(d)(1), Du Trac alleges Debtors fraudulently concealed property interests under § 727(a)(2) and made false oaths in bankruptcy filings and testimony under § 727(a)(4)(A). Du Trac's demonstrative exhibit, Plaintiff's Exhibit 29, graphically shows the extent of the property interests Debtors failed to disclose in bankruptcy statements and schedules and in previous testimony. Du Trac has sufficiently proven the existence of and Debtors' interests in these assets through testimony and exhibits admitted into evidence. The Court concludes that Du Trac has proved that Debtors concealed their property and made false statements under oath regarding that property, which related materially to Debtors' bankruptcy case.

The remaining element under § 727(a)(2) and (4) and § 727(d)(1) is fraud. Debtors testified that they either didn't remember they had interests in the trusts and insurance policies or didn't think their interests had any value, with the trusts having spendthrift provisions. They failed to disclose a 2% interest in one business because they thought they didn't have to disclose interests less than 5%. Debtors assert they thought the sale of their boat was in the ordinary course of their business and it needn't be disclosed as a transfer in their bankruptcy schedules.

These types of explanations are insufficient to overcome the effect of the multiple misstatements Debtors made about the reality of their affairs. Debtors undervalued all of their business interests in an attempt to take advantage of a misguided interpretation of exemption law. They have not included their personal trusts, which hold valuable insurance policies, on their amended bankruptcy

statements and schedules.   If Du Trac had not commenced this adversary proceeding, Debtors' interests in several valuable trusts and multiple life insurance policies, and the transfer of the boat would not have been uncovered.

The circumstances as a whole indicate that Debtors are unwilling to make full disclosure of their property interests.   Du Trac and Trustee went to great lengths to determine the extent of Debtors assets with Debtors blocking them at every turn.  The Bankruptcy Code requires complete, truthful and reliable information from debtors in a bankruptcy case.   Debtors have never fully complied with the duty to provide that information.

The Court concludes that Du Trac has proven that Debtors committed fraud by recklessly or knowingly omitting assets in their bankruptcy schedules and statements in order to mislead Du Trac and Trustee.   They further failed to disclose all their assets when questioned under oath at the § 341 meeting of creditors and Rule 2004 exams.   Thus, Debtors committed fraud under §§ 727(a)(2) and (4).  The Court hereby revokes Debtors' discharge pursuant to § 727(d)(1).

**WHEREFORE**, the Complaint to Revoke Discharge is GRANTED.

**FURTHER**, Debtors' discharge is revoked.

Dated and Entered:

August 5, 2013

_____
PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE